## LAWVER v. GLOBE MUT. INS. CO.

Questions not discussed in appellant's brief will not be considered by the Supreme Court.

Under a fire policy providing that a person who solicits insurance, issues policies, or procures applications shall be considered the general agent of the insurer, the knowledge of an agent who solicited a policy that there was other insurance upon the property was the knowledge of the insurer.

Under a fire policy requiring an insurer in order to avail itself of any provision in the policy rendering it void to promptly cancel the policy upon obtaining knowledge of the facts rendering it void, an insurer waives its right to declare the policy void because of other insurance by its failure to cancel the policy, having knowledge of such other insurance, or issuing it with knowledge thereof.

Under Sess. Laws 1905, c. 126, prescribing a standard form of fire policy and forbidding the insurer to insert any special provisions, the insurer is entitled to such an interpretation of a clause making the policy void because of increase in the hazard occasioned by insured as will include a mortgage placed upon the property by insured.

Proof of the mailing of a letter with the postage prepaid, properly addressed, notifying an insurer of the placing of a mortgage upon the insured property, is sufficient to sustain a finding that the letter was actually received by the insurer.

In the absence of any exception to the charge, it will be conclusively presumed that an issue of fact was properly submitted to the jury.

A verdict upon conflicting evidence is final upon appeal.

Civ. Code, § 1793, defines insurance as a contract whereby one undertakes to indemnify another against loss. Section 1845 provides that a policy is either open or valued. Section 1846 defines an open policy as one in which the value of the thing insured is not agreed upon, but left to be ascertained in case of loss. Section 1847 defines a valued policy as one which provides that the thing insured shall be valued at a specified sum. Section 1877 provides that double insurance exists where the same person is insured by several insurers in respect to the same subject. Section 1878 provides that in case of double insurance each insurer shall contribute ratably toward the loss. Sess. Laws 1905, c. 126, prescribes a standard form of fire policy which provides that the amount of insurance written therein on real property shall be taken conclusively to be the true value. **Held** that, under the standard policy, the value of real property on total loss is conclusively fixed by the total of all the insurance written therein which is the amount of the policy and concurrent insurance, and the total amount of loss is the sum total of insurance, and, the value of the property being conclusively fixed at a sum equal to the loss, the several policies cannot be prorated.

(Opinion filed, June 4, 1910.)

Appeal from Circuit Court, McCook County. Hon. JOSEPH W. JONES, Judge.

Action by J. C. Lawver against the Globe Mutual Insurance Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Null & Royhl,* for appellant.

Evidence that notice of additional insurance was mailed to the company is not sufficient proof of compliance with a policy requiring notice of additional insurance to be given to the company, where its receipt is denied by the person addressed. Fairfield Packing Co. v. Southern Mut. Fire Ins. Co., 44 Alt. 317; Sun Ins. Co. v. Earle, 29 Mich. 406. Notice of intention to take out additional insurance is not notice that the insured had procured such additional insurance. Home Fire Ins. Co. v. Wood, 69 N. W. 940; Eagle Fire, etc., v. Globe, etc., 62 N. W. 895; New Orleans Ins. Co. v. Griffin, 18 S. W. 505. Under the terms of the statute, and the form of policy prescribed therein, the amount of insurance written in the policy "shall be taken conclusively to be the true value of such property and the amount of loss sustained by and the measure of damages of the insured in case the same is wholly destroyed." Session Laws 1905, page

194. Under the valued policy statute, evidence of value was immaterial. The statute fixed the value and the measure of damage. Minneapolis v. Fultz, 80 S. W. 576. It is double insurance where the policies insured against the same risk on the same property and the same interest in the property and for benefit of same party. Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527.

*E. H. Wilson* and *A. C. Biernatzki,* for respondent.

Where an insurance policy contains a condition that renders it void in its inception and this is known to the insurer, it is a waiver, as where the property already contains insurance and no provision made in the policy issued for other insurance. Gurnet v. Atlas Mutual Ins. Co., 100 N. W. Rep. 542; Quigley v. St. Paul Title Ins. & Trust Co., 62 N. W. Rep. 287; 4th Current law 202. Notice to the agent of the insurer, that the insured had taken out additional insurance is notice to the company and a waiver of the condition of the policy prohibiting other insurance. Slobodisky v. Phoenix Ins. Co., 72 N. W. 483. The execution of a policy with full knowledge of the existing facts which by its conditions renders it void, is a waiver of those conditions. Wheeler v. Traders Ins. Co., 1 New Eng. Rep. 322; Liverpool L. & G. Ins. Co. v. Ened, 65 (Tex.) 118; Van Schoick v. Niagara F. Ins. Co., 68 (N. Y.) 434; Bennett v. North British & M. Ins. Co., 81 (N. Y.) 273; Woodruff v. Imperial Fire Ins. Co., 83 (N. Y.) 133. Where the insurer does anything that leads the insured to believe that the strict terms of the policy will not be insisted upon, the breach will be deemed waived. Rundell v. Anchor Ins. Co., 105 N. W. Rep. 112; Jensen v. Palatine Ins. Co., 116 N. W. Rep. 286; Knoebel v. North American Accident Ins. Co., 115 N. W. Rep. 1094. Proof of the mailing of notice and proof of loss addressed to the insurer and properly stamped, opposed by the testimony of the insurer's officers and clerks, that the documents were never received, presents a question for the jury as to whether the documents were received or not. Pennypacker v. Capital Ins. Co., 8 L. R. A. 236. A valued policy determines beforehand the amount for which the assuerd

is liable in case of loss and such sum is inserted in the policy. It does more than to merely value the property insured; it values the loss as the statute of this state says: The amount of the insurance written in the policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages." Laws 1903, Chap. 162, Sec. 1; 19 Cyc .672; Lycoming Ins. Co. v. Mitchell, 48 Pa. St. 367; Lancashire Ins. Co. v. Bush et al., 82 N. W. Rep. 313.

SMITH, J. Appeal from the circuit court of McCook county. Action on a fire insurance policy to recover the sum of $1,000 insurance on the plaintiff's two-story frame building located in the village of Spencer. The property was totally destroyed by fire on the 6th day of August, 1908. Proofs of loss were furnished the company, and, upon refusal to pay the insurance, this action was instituted.

The policy is in the standard form required by chapter 126, Sess. Laws 1905, and is set out in full in the complaint. The policy contains the following clause: "$1625.00 other insurance concurrent herewith only, permitted." The plaintiff alleges that said clause was inserted in the policy by mutual mistake and inadvertence, and that there should have been inserted in lieu thereof, $6,400, other insurance concurrent herewith only permitted, and prays that the policy be reformed by striking out the clause first above quoted and inserting the latter clause in lieu thereof. The defendant puts in issue these allegations of the complaint, but admits the issuance and delivery of the policy, and alleges as a defense that at the time of the issuance of the policy there was other existing insurance on the property in three other companies aggregating the sum of $4,400, and says that at the time of the delivery of the policy in suit the defendant had no knowledge or notice of the existence of said additional insurance, and was not advised thereof until after the loss. The defendant further alleges that in violation of the terms and stipulations of the policy, and without the knowledge, or consent of the defendant, plaintiff on or about the 17th day of July, 1908, executed and delivered to the Farmers' & Merchants' State Bank of Spencer, S. D., a mort-

gage on the insured property in the amount of $2,000, and that at the time of the loss by fire said mortgage was unpaid and in full force and effect. It is contended that by reason of the insurance in excess of the $1,625 concurrent insurance permitted by the policy, and by reason of the giving of the mortgage as alleged, the policy of insurance became wholly void. The issues were tried to a jury, resulting in a verdict for plaintiff for the full amount of the policy. On the trial, plaintiff having failed to substantiate the allegations of the complaint as to the alleged mutual mistake in inserting $1,625 in lieu of $6,400 concurrent insurance, the court took from the jury the issues as to the reformation of the policy, and for the purposes of this appeal the policy stands as originally written. Upon the record it is undisputed that there was $4,400 of existing insurance on the property at the time of the inssuance of the policy in suit, and that the plaintiff did execute and deliver the mortgage alleged in the defendant's answer. The policy contains a provision that: "This policy shall be void, * * * if the insured now has or shall hereafter obtain any other insurance on said property without the assent of the company * * * or if without such assent, the situation or conditions affecting the insured property shall be altered so as to materially increase the hazard, if such increase in hazard be occasioned by the act or agency of the insured." To avoid the effect of the violation of the first of these conditions of the policy, the plaintiff sought to show by oral evidence that at the time of the issuance of the policy one Mr. Nugent, who was the agent of the company, and solicited and procured the policy in suit, was fully advised when this policy issued of the existence of the $4,400 insurance already on the property. The testimony of plaintiff that he so advised the said agent of the company was received and stands undisputed on the record. To avoid the effect of the execution and delivery of the mortgage referred to, plaintiff sought to show that the defendant company was given notice of the giving of the mortgage, and at the trial the plaintiff was admitted to testify that immediately upon the execution of the mortgage he wrote a letter advising defendant thereof, which was duly sealed and addressed to defendant at Huron, the

home. office and, with the postage thereon prepaid, was deposited in the United States postoffice. W. M. Farmer, secretary of the defendant company, was called as a witness for the defense, and testified that the mail at the home office passed through his hands, and that no such letter was ever received by the company; that he had made careful search among the files of the home office; that all letters received by the company are preserved; and that no such letter is among the files in the office. He further testifies that he first learned after the fire that the amount of insurance upon the property destroyed exceeded the amount specified as concurrent insurance in the policy, and that the company had no knowledge of the existence of the additional insurance prior to the time of the destruction of the property. Appellant in its brief says: "Defendant depends on three propositions: First, the overinsurance; second, the mortgage; third, the amount of defendant's liabilities." No other questions are discussed in appellant's brief, and therefore no others will be considered upon this appeal. The statutory form of policy contains the following provision: "A person who solicits insurance or issues policies of insurance, or procures applications therefor, shall be held to be and considered the general agent of the insurer issuing the policy or making a renewal thereof, except as to proof of loss and adjustment thereof." It is to be borne in mind throughout that this form of policy constitutes, not only the contract between the parties, but also the law governing the rights of both. It is unnecessary, therefore, to cite decisions discussing the authority of soliciting agents. This court, however, in the case of Vessey et al. v. Commercial Union Insurance Co. of London, England, 18 S. D. 632, 101 N. W. 1074, says: "It is insisted, however, by the respondent that, inasmuch as all the facts connected with the mortgages and foreclosure of the same were fully known to the agent, the knowledge of the agent was the knowledge of the principal. We are inclined to take the view that the contention of the respondent is correct and is fully sustained by the weight of authority"—citing Harding v. Norwich Union Fire Ins. Society, 10 S. D. 64, 74 N. W. 755. In Fosmark v. Equitable Fire Association, 120 N. W. 777, this

court held that, where the general agent of the insurer knew at the time of the application for insurance that the building stood on leased property and was subject to a chattel mortgage, it was the knowledge of the insurer, reaffirming the decision of this court in Vessey v. C. U. Ins. Co., supra. That Nugent the soliciting agent of defendant was informed by plaintiff at the time of the issuance of this policy of the existence of $4,400 insurance then on the property is undisputed in the record. Under these decisions and the provisions of the policy, the knowledge of the agent, Nugent, was the knowledge of the defendant, and the company therefore stands charged with knowledge of the existing insurance on the property. It is entirely clear that, if no disclosure of this insurance had been made to the insurer or its agent at the time of the issuance of the policy in suit, such concealment would have rendered the policy absolutely void, and would prevent a recovery in this action unless waived by the insurer. But the policy contains also the following provision: "It shall be the duty of the insurer in order to avail himself of any provision in this policy, rendering it void, to promptly cancel the policy as provided herein upon having or obtaining notice or knowledge of the existence of any facts or circumstances which would, according to the terms of the policy, render it void; otherwise it will be deemed to have waived such provision or provisions voiding the policy." It is clear, therefore, that under the decisions of this court and this provision of the policy the defendant has conclusively waived its right to declare the policy void on account of this $4,400 existing insurance by its failure to cancel the policy, or issuing it with knowledge of existing facts which would render it void. Parson Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485; Gurnett v. Atlas Mut. Ins. Co., 124 Iowa 547, 100 N. W. 542; Welsh v. Fire Ass'n, 120 Wis. 456, 98 N. W. 227; Slobodisky v. Phoenix Ins. Co., 52 Neb. 395, 72 N. W. 483; Erb v. Fidelity Ins. Co., 99 Iowa 727, 69 N. W. 261; Power v. Monitor Ins. Co., 121 Mich. 364, 80 N. W. 111; Liv. L. & G. Ins. Co. v. Ende, 65 Tex. 118; Walsh v. Hartford Fire Ins. Co., 73 N. Y. 5.

The question presented by the mortgage is one of greater difficulty. The policy contains no provision relating specifically to

.incumbrances. The general rule as to ordinary policies is that, when the contract is silent in regard to incumbrances, their existence is held to be immaterial. The reason for this rule seems to be that, as the language of the contract is usually that of the insurer, any omissions, ambiguities, or uncertainty of meaning will be construed favorably to the insured. Ostrander on Fire Insurance, 252, par. 79. The legislative assembly of this state, however, by chapter 126, Laws 1905, have prescribed a form of insurance contract known as a "standard form" of fire insurance policy, and its use by all insurance companies doing business in this state is made obligatory under heavy penalties. The. policy in this case conforms strictly to the statutory requirements. This policy therefore becomes both the contract and the law governing and defining the rights and duties of each of the parties to the contract. It may be assumed, perhaps, that the purpose of such legislation is to protect the insured against ambiguities, uncertainties, and inequitable conditions and forfeitures with which the insurer has been prone to burden the contract of insurance, and which have been the occasion of much litigation, and difficulty, and perhaps diversity, of interpretation by the courts, and at the same time to afford the insurer just and reasonable protection against fraud and imposition on the part of the insured. By this law, which is operative equally upon both, the parties to the contract are prohibited from inserting in the contract other or different terms or conditions than those prescribed by the law itself. Certain of the conditions and provisions in the statutory contract are manifestly for the protection of the insurer, while others are for the protection of the insured. It follows that every provision and condition of the contract should be so interpreted by the courts as to render effective the legislative intent to require honesty and fair dealing on the part of both parties to the contract. This legislation renders many of the well-established rules of interpretation of insurance contracts where the language of the contract is that adopted by the parties themselves, wholly or largely inapplicable. The existence or placing of incumbrances by way of mortgage or otherwise upon the insured property is al-

ways deemed a material fact affecting the moral hazard assumed by the insurer; and, if in violation of the conditions of the policy, may render it void. Ostrander on Insurance, 235, par. 79, says: "Most policies now in use provide in some form of words that they shall be void if the property covered is at the inception of the insurance, or shall afterwards become, incumbered by mortgage or otherwise, unless the fact of such incumbrance is represented to the company, and its consent expressed in writing on the policy. This condition the courts have held without dissent to be reasonable and binding on the insured." The statutory form of policy contains no express provision as to incumbrances. It does, however, contain a provision that: "This policy shall be void * * * if without such assent the situation or conditions affecting the insured property shall be altered so as to materially increase the hazard, if such increase in hazard be occasioned by the act or agency of the insured." Under the rule of interpretation applied to the ordinary contract of insurance, such provision might not be held to relate to incumbrances, because they are not specifically mentioned. But, under the standard policy law, the insurer is prohibited from inserting special provisions in the policy, and he is entitled to such an interpretation of this language as will afford protection against any act of the insured which may increase the hazard, either moral or material, and the increase of hazard guarded against by this provision of the policy should be held to include incumbrances. The policy contains no provision as to the mode in which the assent of the insurer may be made manifest, but the other conditions of the policy relieve us in this case from difficulty upon that point. The policy contains a clause that, where the insurer has notice or knowledge of the existence of any facts or circumstances which would render the policy void, the insurer shall be deemed to have waived such provision, unless it shall promptly cancel the policy.

The vital question, then, is whether the defendant had knowledge or notice of the existence of this mortgage prior to the loss. If it had such notice or knowledge, and failed to cancel the policy, the forfeiture is waived, and cannot be asserted as a defense in

this action. The giving of the mortgage being admitted by plaintiff, he must assume the burden of proving such notice or knowledge or consent on the part of the defendant company as would constitute a waiver of this condition of the policy against increased hazard.

Appellant by its fifth assignment of error challenges the sufficiency of plaintiff's evidence to sustain this burden, as follows: "Defendant alleges that the evidence is insufficient to justify the verdict, in this: that there is no evidence that the letter claimed to have been written by plaintiff advising defendant of the placing of the mortgage on the property was ever received by defendant or that defendant ever had any knowledge of such mortgage until after the loss occurred." It is plain that, if the defendant actually received the letter "advising it of the placing of the mortgage on the property," the defendant did have knowledge of the mortgage, and, under the provisions of the policy, a failure of the company to promptly cancel its policy is a waiver of the breach of the conditions avoiding the policy. The precise question presented by this assignment is whether proof of the mailing of a letter properly addressed is sufficient to sustain a finding of the jury that the letter was actually received by the company. It is true that the secretary of the company denied receiving the letter; but, if mailing a letter is evidence of its actual delivery, the denial merely raises an issue of fact for the jury, and their verdict cannot be disturbed on appeal. 1 Wigmore on Evidence, par. 95, says: "The fixed methods and systematic operation of the government's postal service have been long conceded to be evidence of the due delivery to the addressee of mail matter placed for that purpose in the custody of the authorities. The conditions are that the mail matter shall appear to have conformed to the chief regulations of the service, namely, that it shall have been sufficiently prepaid in stamps, correctly addressed, and placed in the appropriate resceptacle." In Home Ins. Co. v. Marple, 1 Ind. App. 411, 27 N. E. 633, a case involving a proposition similar to that under discussion, that court says: "It was necessary in order to establish a waiver of the breach of condition against

other insurance to prove actual notice to the appellant, and silence under such circumstances as to imply its assent to the additional insurance. Proof of such notice was sought to be made by evidence of the writing and posting of the letter duly addressed and stamped. The appellant denied the receipt of the letter, so the question whether or not it was received was clearly one of fact to be determined by the jury. Depositing a letter in a postoffice, properly addressed and stamped, is prima facie proof that it was received by the person to whom it was addressed in due course of mail; but, where its receipt is disputed, the court would not be justified in instructing the jury that the receipt of the letter might be inferred from so mailing it. In the case of Huntly v. Whittier, 105 Mass. 391, 7 Am. Rep. 536, the court said: 'The depositing of a letter in the postoffice, addressed to a merchant at his place of business, is prima facie evidence that he received it in the ordinary course of the mails; and, where there is no other evidence, the jury should be so instructed. * * * The presumption so arising is not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty, and the usual course of business; and, when it is opposed by evidence that the letter was never received, must be weighed with all the other circumstances of the case by the jury in determining the question whether the letter was actually received or not, and the burden of proving its receipt remains throughout upon the party who asserts it.' This doctrine is founded upon business experience and sound principle, and is strongly supported by the following authorities: Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; Briggs v. Harvey, 130 Mass. 186; Kenny v. Altvater, 77 Pa. 34; Meyer v. Krohn, 114 Ill. 574, 2 N. E. 495; Eckerly v. Alcorn, 62 Miss. 228; Austin v. Holland, 69 N. Y. 571, 25 Am. Rep. 246; Greenfield v. Crafts (Mass.) 4 Allen, 447; Duringer v. Moschino, 93 Ind. 495; Wade, Notice, § 501; Whart. Ev. § 1323, and note: 13 Amer. & Eng. Enc. Law, p. 260. It is universally admitted that the inference of delivery deduced from the mailing of a letter duly addressed and stamped is an inference of fact, and not

a conclusion of law, except as applied in cases of notice of the dishonor of bills of exchange and notes goverened by the law merchant." In the absence of any exception to the charge of the court, it will be conclusively presumed that this issue of fact was properly submitted to the jury, and their verdict be deemed final upon this appeal.

Appellant assigns as error the refusal of the court to instruct the jury "that the plaintiff cannot in any event recover to exceed 10-64 of the $2,625 insurance provided for in plaintiff's policy." As we understand it, this requested instruction is based on the theory that appellant cannot in any event be required to pay more than a pro rata share of the entire insurance on the property when the total loss occurred. This assignment squarely presents the question whether the provisions of chapter 126, Laws 1905, limit in any degree the application of sections 1877 and 1878 of the Civil Code in cases where the policy covers real property, and the same "is totally destroyed without criminal fault on the part of the insured or his assigns." Section 1877 and 1878 have been for many years a part of the Civil Code of this state, applicable to all fire insurance policies, and read as follows:

"Sec. 1877. A double insurance exists where the same person is insured by several insurers separately in respect to the same subject and interest.

"Sec. 1878. In case of double insurance the several insurers are liable to pay losses thereon as follows: (1) In fire insurance, each insurer must contribute ratably toward the loss, without regard to the dates of the several policies.   *   *   *"

Section 1793 provides: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event."

"Sec. 1845. A policy is either open or valued.

"Sec. 1846. An open policy is one in which the value of the thing insured is not agreed upon, but is left to be ascertained in case of loss.

"Sec. 1847. A valued policy is one which expresses on its face an agreement that the thing insured shall be valued at a specified sum."

Wood on Insurance, § 41, says: "Valued policies are those in which both the property insured and the loss are valued, and which bind the insurer to pay the whole sum insured, in case of a total loss. They may be said to be policies, in which the insurer himself, at the time of making the policy, assesses the damages in case of a total loss, unless fraud, inducing an overvalution on the part of the assured, is established.    *    *    *    It often happens that a policy may be mixed; that is, both an open and a valued policy, valued as to one class of property, and open as to another. Thus for example, a policy if issued to A. as follows: '$500. upon his dwelling, house frame slate roof, etc., valued at $500, and $500, upon his household furniture therein.' Now, so far as the policy relates to the building it is valued— in case of a total loss the sum insured must be paid; but, although all the household furniture is destroyed, the insurer is bound to pay no more than the value of the furniture destroyed, and the same is true as to policies covering a building and fixed machinery, and also stock and materials. As ·to the former, it may be valued, and as to the latter open. In order to constitute a valued policy, the policy must contain words that show an intention on the part of the assured to value the loss, and this is usually accomplished by using the words 'valued at,' although such words are not indispensable. If there is anything in the policy that clearly indicates an intention on the part of the insurer to value the risk and the loss, in whatever words expressed, the policy is valued, otherwise it is open." The standard form of fire insurance policy which the law requires to be used in this state is mixed—constituting an open policy as to personal property, and a strictly valued policy as to real estate when the same is wholly destroyed. It contains the following provision: "The amount of said loss or damage to be estimated according to the actual value of the property insured at the time when such loss or damage happens, except that the amount of insurance written herein upon any real property    *    *    *    shall be taken conclusively to be the true value of such property, and the amount of loss sustained by, and the measure of damages of the in-

sured, in case the same is wholly destroyed without criminal fault on the part of the insured or his assigns."

Under this provision of the statutory policy not only is the true value of the insured real property conclusively fixed, but by it the absolute liability of the insurer to pay a fixed sum is also conclusively established. The true value of the property destroyed and the amount of the loss and measure of damages being conclusively fixed by the law and the contract evidence as to the value of the property destroyed or as to the loss sustained or the measure of damages becomes wholly immaterial and incompetent for any purpose. "The amount of insurance written herein" plainly contemplates the amount of the policy together with the amount of concurrent insurance permitted by the insurer under the terms of the policy. Under an open policy, the value of the property when equal to or in excess of the total of all insurance does not affect the amount recoverable by the insured. He may recover in such case the full amount of each policy. It is only when the total loss is less than the total insurance that the insurer may be required to contribute ratably toward the loss. Under the standard policy, the value of the real property on total loss is conclusively fixed by the total of all the insurance therein written, viz., the amount of the policy and the concurrent insurance, and the total amount of the loss is the sum total of the insurance. Of this loss each insurer must pay the amount of his own policy—no more and no less. The value of the property being conclusively fixed at a sum equal to the loss, the different policies cannot be prorated. As to real estate, this new law does not contemplate that the insurer shall permit double insurance.

Double insurance and concurrent insurance are entirely distinct. The very purpose of the law is to prevent double insurance, and it places in the hands of the insurer the most effective means to prevent it, viz., the absolute right to cancel his policy the moment he has notice or knowledge of its existence, or the right to defeat any recovery on his policy if double insurance exists without his knowledge. With such effective weapons of

defense in his hands, it is his own fault if he shall suffer loss by reason of overinsurance. He may not issue policies, or insurance permitting concurrent insurance, in excess of the real value of the property insured, except at his own peril, and must make his own examination and estimate of values at his own peril. He must not accept premiums on excessive insurance, and then refuse to pay the loss. The defendant having knowledge through its agent of the double insurance might have canceled the plaintiff's policy long before the loss occurred, and, if it now suffers by its own neglect, it has no one to blame but itself. If it be said that its agent had failed to communicate the fact of double insurance to the company, it but emphasizes the duty of the company to select diligent and faithful agents for the transaction of its business, and it would seem that the insurer should pay the penalty for such negligence rather than the assured. We are not called upon to consider whether under this law one insurer may be compelled to make contribution to another in case of loss. That question is not involved in a determination of plaintiff's rights, and is not before us.

We believe the decisions of the courts of other states under similar laws sustain the views herein expressed. It seems to us that any other construction of this statutory policy would render the law ineffective and defeat the very purposes of its enactment. We do not deem it necessary to discuss in detail the decisions of the courts under valued policy laws similar to our own, but the following cases we think will be found to support our conclusion upon the question here under discussion: Barnard v. Nat. Fire Ins. Co., 38 Mo. App. 106; Oshkosh Gas L. Co. v. Germania F. I. Co., 71 Wis. 454, 37 N. W. 819, 5 Am. St. Rep. 233; Havens et al v. Germania F. I. Co., 123 Mo. 403, 27 N. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570; Cayon v. D. H. Ins. Co., 68 Wis. 510, 32 N. W. 540; Minneapolis v. Fultz, 72 Ark. 365, 80 S. W. 576; Reilly et al. v. Franklin Ins. Co., 43 Wis. 449, 28 Am. St. Rep. 552. In the latter case the court says: "We have already said that the Legislature seems to have enacted the law of 1874 to prevent or do away with as far as possible the great evils and mischiefs arising from overinsurance. Conse-

quently, on grounds of public policy and in order to accomplish that end, it was provided that the amount of insurance written in the policy should be conclusive as to the value of the real property destroyed. Now the law is well settled that, where a statute is founded upon public policy, a party cannot waive its provisions even by express contract. 'The contracts of private persons cannot alter a rule established on grounds of public policy.' Emery v. Piscataqua F. & M. Ins. Co., supra; [52 Me. 322] ; Sedgw. Stat. & Con. Law, p. 70."

Counsel for appellant also assigns as error the rulings of the trial court rejecting proof of the adjustment of plaintiff's loss under the other policies of insurance and the insufficiency of the evidence. These matters are fully disposed of by the views expressed upon the other assignments discussed herein.

We find no error in the record, and the order and judgment of the trial court are affirmed.